**Joseph SEIBERT, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14853.**

Court of Criminal Appeals of Oklahoma.

July 2, 1969.

Jay D. Dalton, Public Defender Tulsa County, for plaintiff in error.

G. T. Blankenship, Atty. Gen., S. M. Fallis, Dist. Atty., Ted Flanagan, Asst. Dist. Atty., Tulsa, for defendant in error.

BRETT, Presiding Judge.

The plaintiff in error, Joseph Seibert, hereinafter referred to as the defendant, was charged by Information filed in the District Court of Tulsa County on November 17, 1967, with the crime of robbery with firearms after former conviction of a felony.

Prior to the filing of the Information following his preliminary hearing, the defendant was committed to the Eastern State Hospital for a period not exceeding ninety days for observation. He was returned to Tulsa County, having been found not to be insane and that he was presently able to assist his counsel in his defense.

He appeared with his counsel Public Defender Dyer, was duly arraigned, entered a plea of not guilty and his case was set for trial on the February 1968 docket. Thereafter the defendant filed in longhand the following:

(1) A petition for a writ of habeas corpus.

(2) A motion for a mental examination by an independent psychiatrist.

(3) A petition to proceed forma pauperis.

(4) A motion to suppress the evidence.

(5) A motion for a change of counsel.

(6) A motion for a change of venue.

(7) A motion for a second preliminary hearing.

(8) A motion to strike the allegations of former convictions.

The court sustained motion No. 5, and Mr. Dyer, was permitted to withdraw as counsel, and Mr. William W. Hood, Jr., was appointed to represent the defendant. His petition for a writ of habeas corpus was heard and denied on January 17th, and the other motions were set for hearing for January 24th. On the latter date, the defendant being present with counsel, a hearing was had on the remaining motions, at the conclusions of the hearing the defendant waived and withdrew all of his motions save the one to strike the allegations of former convictions. Ruling was reserved on this motion, and his case was set for trial for February 5, 1968.

On February 5th, the defendant with his counsel appeared before the court, his motion to strike the allegations of former convictions was overruled. The defendant then withdrew his former plea of not guilty, waived trial by jury, and entered a plea of guilty to the Information including the allegations of former convictions of felony.

Prior to accepting the defendant's plea of guilty, the court advised the defendant of the statutory penalty, and ascertained

that his plea was voluntary. The defendant stated:

"Your Honor, Mr. Hood informed me that you could give me the death penalty on a plea of guilty, and he also told me that the prosecuting attorney would, in his opinion, recommend—would not recommend the death penalty. And at this time I am pleading guilty because I am guilty in front of you for leniency because I am afraid that if I take this case to a jury with an after former conviction I would get the death penalty or get a longer sentence, which I do not think I deserve."

Prior to asking for a recommendation from the State as to the proper penalty, the court asked for a statement of the facts in the case and an outline of the past record of the defendant. The statement was given by the assistant district attorney *with the consent of the defendant.*

The statement revealed that in the course of the robbery at the Sipes Food Market, that the defendant shot the manager twice, that he held up several cashiers at the check-out stands and required them to surrender their money to him. That the robbery was witnessed by a number of patrons as well as employees of the store. The defendant was apprehended within a few minutes of the robbery.

The record of his prior convictions showed that he had previously been convicted of (1) burglary in 1955, sentence 10 years; burglary 1956, sentenced 5 to 10 years; forgery 1958, sentence 7 years, murder 1965, sentenced life imprisonment.

That on October 13, 1967, just thirteen days prior to the robbery of the Sipes Food Market, the defendant was in a courtroom in Kansas City, Missouri, on an application for a writ of habeas corpus, and that he escaped from the custody of a deputy sheriff and fled to Oklahoma. That after the hearing in the Tulsa County District Court on January 17, 1968, the defendant again escaped custody of a deputy sheriff and was captured in the halls of the courthouse before he could make good his escape.

The State recommended a sentence of 150 years, and thereafter both the defendant personally and his counsel Mr. Hood were permitted to make statements and arguments in mitigation.

The Court, the Honorable Raymond W. Graham, on consideration of the statements and argument of counsel and the defendant, and on due reflection thereof, found:

"* * * the record of the defendant is replete with antagonism toward society and a sneering contempt for law, that he has dedicated his life in the pursuit of crime from the time that he reached adulthood until the present time, that incarceration in the penitentiary for the longest possible period of time is mandatory and necessary for the protection of society, to serve as a warning to other evildoers, that the rehabilitative effect of incarceration has not had any good effect in the past, and the Court is abandoning the lip service that many people would place insofar as Mr. Seibert is concerned concerning rehabilitation, the callous planned act, the defiance of the laws of the State of Oklahoma and the other states in the Union, that the Court considers the recommendation made by the District Attorney to be applicable and appropriate in this case, and it is the judgment and sentence of the Court that Joseph Seibert, age 28, be sentenced to a term of 150 years in the State Penitentiary."

▮ Defendant's court appointed counsel filed a brief in defendant's behalf in which he raised one proposition, that being: "The assessment of punishment for a term of years beyond the span of life presently allotted to a human being is cruel and unusual." In support of this proposition he cites from 24 B C.J.S. Criminal Law § 1978b and the cases of Ex parte Meyers, 55 Okl.Cr. 75, 24 P.2d 1011, 1012, and a Nebraska case styled McMahon v. State, 70 Neb. 722, 97 N.W. 1035. The substance of these citations is that punish-

ment set forth for a particular crime is not excessive, unless it is so excessive as to shock the sense of mankind. In this respect however, such analysis becomes subject to the facts and circumstances of the particular case under consideration. Consequently, applying such analysis to the facts of the case under consideration, the punishment is not so excessive as to shock the sense of mankind.

■ Nor do we accept counsel's contention that the sentence of the trial court—on defendant's plea of guilty—was the result of inflamed passion. The record before the Court reflects that prior to passing judgment and sentence the trial judge heard argument of both counsel which were given due consideration; and there is nothing in the record which reflects any haste on behalf of the trial judge in passing sentence. Therefore, we do not accept counsel's contention of "inflamed passion" in this case.

■ Counsel's closing argument, in his brief, is that the assistant district attorney's recommendation to the trial judge, relative to the 150 year sentence, was improper. This argument is likewise unacceptable. This Court stated in Herren v. State, 74 Okl.Cr. 432, 127 P.2d 384:

"Under this statute [22 O.S.Supp. § 973] we think it proper where punishment is left to the court for him to make inquiry at the suggestion of either party into all circumstances which might be properly considered in aggravation or mitigation of punishment." See also: Powell v. State, 94 Okl.Cr. 1, 229 P.2d 230; Kittrell v. State, 96 Okl.Cr. 301, 253 P.2d 853; and, Williams v. State, Okl.Cr., 321 P.2d 990; affirmed 358 U.S. 516, 79 S. Ct. 421, 3 L.Ed.2d 763; Rehearing denied.

Subsequent to the filing of the brief by defendant's court appointed counsel, the defendant filed pro se a "Supplementary Brief of Plaintiff in Error." The first five assignments of error set forth in his own brief were all waived by defendant prior to the time he entered his plea of

guilty to the charge of armed robbery, after former conviction of a felony. In addition, his specific assignment—that he should have been provided an independent psychiatric examination at State expense, was also personally waived by him with advice of his counsel, at his hearing before the District Court on January 24, 1968. At that time, defendant waived all his special motions, except for the one contending that the "After Former Conviction" charge should have been dropped because he was charged with a capital offense. Subsequently, on February 5, 1968, the trial court denied that motion.

■ This Court held in Cody v. State, Okl.Cr., 361 P.2d 307, 84 A.L.R.2d 997 (1961), to allege the Former Conviction of a Felony charge is not improper with an armed robbery charge, although the death penalty could be invoked. The same is true when a capital offense charge is filed, where the defendant may be found guilty of a lesser included offense, in which instance the second stage proceeding may become pertinent. This is applicable in those cases tried by a jury, when a two-stage proceeding becomes necessary. In those cases, when a verdict of guilty is returned on the charge alleging the capital offense, the second stage of the proceeding should be summarily dismissed by the trial court, as being unnecessary to further enhance the maximum punishment of death, or life imprisonment.

■ However, no jury was involved in the decision of this case. Defendant in this case entered his plea of guilty to the charge of Armed Robbery, After Former Conviction of a Felony, of which he had been fully apprised. Likewise, the two-stage proceeding was not applicable to the facts of this situation, because both the Judge and the defendant knew what the full charge encompassed. With this knowledge, and only after he had counseled with his attorney, the defendant entered his plea of guilty. His stated reason was, to avoid the possibility of the death sentence, which he did. Therefore defend-

ant's pro se proposition in this instance is without merit.

Next defendant asserts that he was coerced into entering his plea of guilty. He gives, as the basis for this assertion, that his counsel advised him that he *could* receive the death penalty, if a jury trial was had; and further, because his counsel informed him that the district attorney would recommend a punishment less than the death penalty, on a plea of guilty. His counsel advised him properly, and the consequences of that advice were borne out by what occurred. We conclude such not to be coercion, in order to induce a plea of guilty. The record also reflects that defendant informed the court that his plea was voluntarily entered, of his own free will.

At the conclusion of the defendant's statement to the court when the Judge accepted Defendant's guilty plea, *with the consent of the defendant* the trial judge asked for a statement of the facts in the case and the assistant district attorney then recited defendant's list of former felony convictions, one of which was a 1964 sentence of "life imprisonment" imposed in the State of Missouri, on a conviction for the crime of Murder. The list of Former Convictions is hereinbefore set forth.

His last assignment is also related to his allegation that he was under duress when he entered his plea. In that assignment he *now states,* "Petitioner was not satisfied with his lawyer." He further recites that when the court inquired if he were satisfied with his lawyer, he replied: "I won't know until after you have sentenced me." When the court refused to accept his plea on that basis, defendant revised his answer and stated, "Judge, I'm satisfied with this lawyer up to this time." He now contends that under those circumstances somehow the trial judge acted erroneously. We fail to comprehend any basis for his complaint in this respect. He urges in his Supplemental Brief filed pro se, that any sentence over five years would be excessive. Such may be his point of view, but it is not that of the Court.

In concluding this matter, with respect to defendant's implication that he had some phase of "insanity" to offer as a possible defense, we are of the opinion that the examining psychiatrists at the Oklahoma State Mental Hospital at Vinita, Oklahoma, were correct in their evaluation of the defendant. Their letter to the Court stated that defendant was sufficiently able to aid his counsel in his defense. Defendant's continued actions of filing pleadings in his own behalf—in addition to those of his court appointed counsel—clearly sustains the findings of the hospital psychiatrists. The statement of another psychiatrist made in an earlier case before this Court, seems most appropriate in this instance. In that case the psychiatrist testified concerning that defendant. "If he's crazy, he's crazy like a fox." Also, there is no authority wherein the state is required to provide independent psychiatric examination for a defendant.

Finally, we observe that nowhere in the record does there appear to have been any effort on the part of the defendant to withdraw his plea of guilty, nor has he sufficiently shown that there was any undue influence or duress in securing his plea. Consequently, we find no reason to disturb the judgment and sentence imposed on defendant in the District Court of Tulsa County. We conclude that a defendant who freely and voluntarily enters a plea of guilty, with full knowledge of the nature and consequences of such plea, and who does not thereafter seek to withdraw such plea, he preserves nothing for review by this Court on appeal, where the trial court had jurisdiction of the person, the subject matter, and authority under law to pronounce the judgment and sentence. See: Hill v. State, Okl.Cr., 441 P.2d 480, and Renfro v. State, Okl.Cr., (1969).

We are therefore of the opinion that the judgment and sentence of the District

Court of Tulsa County should be, and the same is, affirmed. Judgment and sentence affirmed.

BUSSEY and NIX, JJ., concur.